Good morning, Your Honor, and yes, it's the Karuk Tribe of California. My name is Roger Flynn, counsel for the Karuk Tribe. And if you could keep your voice up, please. Okay, thank you. This case has a few aspects, but one central legal question. The first issue is the focus of the case is about salmon, a species of northern California coho salmon. It's listed under the Endangered Species Act as threatened with extinction. And the northern coho salmon is central to the religion and the culture and indeed the life of the Karuk people. May I just ask you a question? I appreciate why you are saying that. But isn't the real question here, you've got the general mining law of 1872, which overlays or underlays everything. And the question is how the other laws, including the Endangered Species Act, fit on top of that. And what happens vis-a-vis the mining law? Right. If there were no Endangered Species Act, would there be any question on the part of your client of the ability of the defendants and those who want to mine to do what they want to? The quick answer is no. Under the Forest Service Organic Act and their own regulations, the Forest Service cannot outright prohibit mining under the mining law, but they have the duty to protect water quality, wildlife, and things like that. That's an overlay that came with the National Forest Management Act or something. Well, the National Forest Management Act is not part of this case, but that is another law that would apply. I was just involved in a case in Nevada, Montana, with that. Right. But so there is authority of the Forest Service to regulate mining. Now, mining is not a free pass. Miners seem to argue that all the Forest Service does when the miner gives a notice, we're going to do this, the Forest Service just says, have a nice summer. We don't do anything. Now, as I understand the mining statute, it requires that the Forest Service determine before the permission to go forward has to find that either through the plan of operation or through the NOI that there won't be a substantial surface disturbance. Does that come out of the mining law? No, the mining law itself is more of a property law. It's a claiming law. The federal government still owns the land. The taxpayers own it. The miner has a claim on it. They submit either a notice of intent or a plan of operation. Where does the substantial disturbance criterion come from? That comes from the Organic Act of 1897 and the 36 CFR Part 228 regulations, which were passed about 80 years later, that enact sort of the put the flesh on the bones of the Organic Act. And that act exists independently of the Endangered Species Act. Right. So even if the Endangered Species Act weren't here, the Forest Service has to look to see before it allows the mining to go forward that there's not going to be substantial disturbance of the surface. That's right. And that's where the Forest Service's discretion comes in. The Siskiyou Project case from a couple of years ago from the Ninth Circuit, the court unanimously held that that was a discretionary determination by the agency whether mining should go forward under an NOI versus a plan of operations, what level of authority. But I think the big if here is if the Endangered Species Act didn't apply. The Endangered Species Act has been called by the Supreme Court the most comprehensive statute enacted by any nation in history for the protection of endangered species. It takes priority, according to the Supreme Court, the famous TVA v. Hill case, takes priority over all other agency missions. Well, the general language makes me uncomfortable, but I will look at the language of the statute. Let me understand where the case is now. It sounds to me as though the Forest Service has conceded that consultation under the ESA is required with respect to a plan of operation. Yes. And the only question in front of us is whether consultation is required if the Forest Service allows mining to go forward under an NOI, notice of intent. That's right. That's the precise question in front of us, Forest Service having conceded that consultation is required if the mining is going forward under a plan of operation. That's right. At the beginning of the case, we had also challenged plans of operations without ESA consultation, and the government quickly conceded and settled. In that case, we dismissed that part of the case. So we can take that out and the Forest Service can contradict, but I'm taking that as established law, that ESA consultation is required for a plan of operation. That's my understanding, Your Honor. And they can disagree if I've misunderstood the nature of their concession or the settlement. Right. The issue here under the Endangered Species Act regulations, those are not the Forest Service regulations, they're the regulations passed by the Interior and Commerce Departments, which the Supreme Court says have been in Congress, entrusted the administration of the ESA to those agencies. So it's their regulations, the 50 CFR 402 regulations that we're talking here. And the question is, what's an agency action under the ESA implementing regulations? I just want to be sure I understand. My understanding under the implementing regulations of the ESA is that those don't apply where it would be contrary to existing law or regulation. Is that not correct? No, that's, I think you, that is talking about the Siskiyou Project case, and that was dealing with a forest plan standard. I was counsel for that case. The forest plan standard, we argued, essentially trumped the national regulations, the Santa Y versus Pooh, and the Ninth Circuit unanimously held that the Forest Service's discretionary determination actually overrides the forest plan standard. So that was that conflict of law regulation. The ESA regulations apply and are binding on the agencies. All the ESA cases that were briefed. And I appreciate that, counsel. What I'm trying to understand is my review suggests that the ESA and the implementing regulations understood that there was a general mining law of 1872 and that there were certain things in there that needed to be accommodated. And basically there was basically a pass for certain things. And that's what we're, of course, talking about today is how exactly in this area, this uncharted area, if you will, of NOI do we deal with this? Your position is that the NOI basically is nonexistent. If the department does anything, makes any decision, then the ESA applies and it becomes a PO. Isn't that correct? Well, first a couple answers to your questions. The first one, the Endangered Species Act applies. The implementing regulations apply regardless of the mining law. The Ninth Circuit has enjoined mining because of violations of the Endangered Species Act. So the ESA and the regulations apply to mining as in every other aspect. I appreciate that. What I'm saying, though, is that do you not agree that at least the subject of our case today is there is this little teeny area here involving when there's not any significant land surface disturbance that seems to fly in the face of the general application of the Endangered Species Act? And the question is whether that survives your position or whether the government is correct that, in fact, like the Marmot case talked about, if you don't give people a chance to consult a little bit, try to avoid any of these regulations, it's going to kill a whole industry. It kills off the portion of the law which was never intended to be killed off. There's a reasonable accommodation here. And that seems to me to be the tension between your position and the government. Is that a fair statement? That's not how I would put it, but there is a tension. And here's where the Ninth Circuit has looked. And the Supreme Court recently in the Home Builders case talked about what is an agency action. There has to be discretionary federal involvement or control. That's the key. In the Ninth Circuit, Turtle Island, Western Watersheds, some of the other cases we cited, talk about the issue there is whether the agency has any ability or discretion to influence the private action. That's the question. If the agency has the ability to influence the private action, then it's agency action under the ESA, applies to mining, timber sales, whatever. But that didn't specifically apply to the NOI context, did it? Well, those are the ESA regulations. They apply to all federal agencies. There's no ESA case dealing with this yet. Right. This is a first impression issue. Okay. So in this case, the question is we look to the record. Does the Forest Service have any influence over mining submitted under an NOI? Let me just be sure I understand. I kind of eliminated a couple of things from our discussion here. As I understand it, the tribe doesn't in this appeal challenge the promulgation of the regulations as requiring ESA consultation. Is that right? Speaking specifically of 60 CFR 402.02. Those are the ESA regulations. Yes, those are binding. And you're not challenging them? No, those are the Department of Interior regulations. And as I understand it, the tribe also doesn't challenge the validity of the ranger's finding in this case of no significant surface disturbance. Well, we challenged it because it violated the Endangered Species Act. You're not saying that what the agent did was incorrect as far as finding no significant surface disturbance? Well, we disagree with that because he never consulted with the wildlife agent. That's a different question. You're not challenging the fact he said there was. And you're saying that the fact that he had discretion to make the determination means you've got to have a PO in this case. Is that correct? No. What we're saying is even if mining the determination by the ranger that there's no significant impact. Right. That's his ability or her ability to influence the private action. In fact, again, I understand your point. I'm trying to get you to understand my question and point here. I understand that you say that because he made this determination, that in and of itself kills the government's position. I'm just simply saying nobody's saying that he was wrong in saying that there was no significant surface disturbance. Right. Well, the case never got to that. OK. So you didn't raise that. That's not right. I'm sorry for leaving. That was my fault. But the question is, under the case law, whether there's ability to influence the private action on the neighboring Six Rivers National Forest. Well, I understand your point.    And then there was a notice of intent, and then there was an identical notice of intent was submitted. And the acting forest supervisor rejected the plan or rejected. Excuse me, the notice of intent, because it did not protect salmon enough, clearly influencing the private action. And in fact, as a result, the new 49ers group withdrew their N.O.I. and never mined that area. If the question in front of us is whether or not allowing an N.O.I. to go through and then allowing the mining to take place pursuant to the N.O.I. is agency action within the meaning of the ESA. And if that question is answered based on whether or not that's a discretionary judgment by the forest ranger, why isn't the discretionary judgment question authoritatively answered as to N.O.I.s under the Mining Act by the SISKU case? I just read to you from the SISKU case. I'm on page 565, F3, 557. In other words, determining which operations are likely to cause significant disturbances of the surface resources and therefore require a plan of operation requires a discretionary determination by a district ranger. Right. And I think why does that just answer the question as to whether or not we got a discretionary determination? Well, that's why I cited it a few times, Your Honor. And we lost that case because the issue we thought the agency didn't have discretion, that the forest plan said, no, you have to do a plan of operations in these riparian reserves. The Forest Service successfully argued to the Ninth Circuit, no, that's a discretionary decision by the district ranger. It's his or her call. And we think the record here is very clear that in making that call, one time, again, they rejected one plan of operations. They even said, we pointed out a few times where they said terms and conditions for mining under an N.O.I. So for the Forest Service to win here, you have to find when a miner submits an N.O.I., the Forest Service essentially has no authority, no discretion, no ability to influence the private action. I think the record here is pretty clear that they do have that authority. And they have exercised it here. There's a Seventh Circuit case, Texas something or other, Texas Resources, under the Clean Water Act, that says that someone issuing sort of a notice to operate under a general permit is not a discretionary action because of the criteria laid out in the general permit under the Clean Water Act. Why, in your view, is this case different from that Seventh Circuit case? You know, when I read the brief, I said, ooh, I looked at the Forest Service description of that case. I said, yikes. And I actually read the decision. What that was is the EPA had issued a general permit to oil refineries or something like that in Texas. And then if you wanted to do subsequent other operations later, you submitted a notice. And I don't think the EPA had music, but the air pollution. That's right. The yeah, sometimes it is, isn't it? Those ringtones are annoying. So what happened was that they issued the general permit. And then under the general permit, someone just submitted a notice. And that was – there was nothing going on at the notice. There was no discretion. That was just a notice. You read the decision, though, in that Seventh Circuit case. And the Court specifically found that in setting the general permit, they did consult. EPA did consult with Fish and Wildlife Service, in that case the Interior Department. So some point in the process, there has to be some consultation if there's the ability to influence. So I think that case actually helps us because the passage in that case we talked about actually said, because there was previous consultation, we don't require it now. So the question is, I think you're framing it, is then how has this been set up such that is the NOI – is the decision in front of the Forest Service whether to accept the NOI a ministerial decision or does that decision itself require some discretion on the part of the forest ranger? Well, I think the Siskiyou Project Court said it's a discretionary determined by the ranger. And, you know, in the Six Rivers case that we talked about, they actually rejected the NOI saying, we are sending this back unless you do the following things to protect salmon. That's clearly a discretionary action. Well, in fact, you've got on the record here, with respect to this defendant, a proposed NOI. And the forest ranger writes back, well, if you fix the following things, I'll accept it as an NOI. But as it now stands, I won't. Right. And that was also the Six Rivers one. And, you know, in 2003, the Forest Service, with the exact same NOI from the new 49ers, approved it via a plan of operations. And in 2004, they approved it via an NOI. And, you know, obviously we understand deference to agencies. There's no deference here under the ESA regulations. But the agency essentially just switched positions. You agreed that if your position is correct and prevails, that NOIs are a thing of the past. No, no. Because as a practical matter, you're saying that any time a forest ranger makes any decision whatsoever that may or may not impact on a minor, that you trigger agency action and, therefore, you trigger the ESA, which triggers consultation, which means effectively that that business disappears. You know that, don't you? I don't think that would happen. What you could do is like what they did. Well, how does a little guy with a pan who goes out there under the 1872 Act, which is one of the NOIs here, how does that person who maybe makes enough money to do minimum wage in the United States, take care of consulting with the Forest Service and with environmental groups? It's dead. You're killing the industry. Now, if that's what Congress intended, that's the way it goes. But let's be clear about what we're talking about here. You're saying that the NOI is dead. Anything that the agency does, any decision that it makes, brings it within the ambit of the ESA. Isn't that an accurate statement? If I may go over, Chancellor. Take what time you need to say what you need to say. First of all, gold panning is not subject to NOI. It's called de minimis. Well, it's one of the NOIs here, isn't it? No, it's actually these suction dredgers that motor – Well, that's another NOI. But one of them is a gold panner. No, well, unless I read the record wrong. The NOI is what these de minimis are casual use operations. That's the whole idea. Right. With the other people, the suction, you're talking about like a 35-mile deal. You've got 10 people that take a little machine, and they go here, and the ranger helps to spot the areas that will be the least impactful. The whole idea apparently being, according to the history, to make certain that there's – we've got these de minimis little things. They want to make certain that even with that, that there is the least possible damage to anything related to the environment. But you're saying, if I read your pleading correctly, we want none of that. No de minimis here. We want full-blown ESA on everything. If the Forest Service winks, says anything about what you can do or cannot do, that's agency action. That brings in the whole thing. That's your position, is it not? Well, you wouldn't have to submit a plan of operations. You would submit the NOI. And what could happen here is what maybe the EPA didn't expect. You're making up the law, then. You're making up the law. The NOI does not contemplate consultation like a PO does. You're saying, none of that. We want the full-blown deal. Isn't that correct? Well, I think the Washington case, the National Wildlife Federation versus National Marine Fisheries a couple years ago, said the agency cannot create regulations or interpret their regulations to avoid ESA consultation. And we think that's what's been done here. If it means that the NOI process becomes more complicated — You didn't contest those. Your client didn't contest those regulations. No. We like the ESA regulations. That's very — But the regulations that issue before us, your client didn't contest them. We just talked about that. Right. We don't — So you don't have me standing to challenge those regulations, do you?  They're binding it on the books. We've not challenged those. Okay. All right. So that's what I'm saying. We're just simply saying, you say that the regulations, which you're bound by, they don't conform to the ESA because it requires agency action, and therefore the NOI goes away. Well, if you're talking about the mining, the 228 regulations, the Forest Service regulations, well, as applied to this case, we say they violate the Endangered Species Act. That was not around in 1974 when they were promulgated originally. But as applied, we think the ESA trumps, as the Supreme Court says it does. And I appreciate this back and forth. It's very interesting questions, Your Honor. And if I may have — if there's any more questions, if I have a minute or so in rebuttal. I'll make sure you have a chance to respond, and I hesitate to take you even further over time, but I will to make sure that the Forest Service understands what's on my mind with respect to this point. In your view, would it be possible for the Forest Service to set up a system of NOIs such that the NOI is not a discretionary judgment, then it falls under the Seventh Circuit's analysis? That is to say, would it be possible for them to do a general consultation with respect to suction mining, set out very precise criteria as to what suction mining can or cannot do, and then have the notices of intent comply with the — how do I want to say it? And then have the NOIs not involve a discretionary decision such that no consultation is required? Right. Is that possible? That is possible. I think that's what the EPA did in the Texas case. The Forest Service does that on — Well, the reason I ask that is I understand how that works in the Clean Water Act, because it's easier, I think, to see how you can have non-discretionary criteria such that a notice of intent to proceed under a general permit is very clearly going to be ministerial. Is it possible to do the same thing, given the things that are at issue with respect to a permit to go forward with respect to substantial surface disturbance? Yes, I think it's very doable. And, in fact, the agency does that with NEPA, for example, to do a programmatic EIS, so then individual decisions essentially have minimal to no review. So the agency is equipped to do that. Other agencies do that with these general permits for consultation. Our main point is — And if the Forest Service were to do that, we could then have NOIs that don't require consultation. All we need is a general set of criteria that make the NOI issuance a non-discretionary ministerial act. Right. To throw you off further, under the general mining law of 1872, if a miner goes out to the river with a little machine and wants to do a little suction mining in one little area out of thousands of acres and does not get an NOI, did the miner have to have a permit from the Forest Service to do that, or is he or she authorized under the mining law itself to do that? Well, I think under the Weiss case, the Supreme Court law case, the Richardson, the Clouser case, there's actually been some recent trespass actions brought by the United States for people essentially illegally mining. The Forest Service can't — Were they people who were in big-scale operations? No, no, no. At least the minimum. No, no. The big operators, the cases we've been in front of, you know, 10,000-acre gold mines, for example. Yeah, right. That process takes years to go through. Right. If you do not get Forest Service approval, authorization — you know, the words are back and forth in the briefing — you're going to be guilty of trespass. You have to get some sort of review by the Forest Service. What's your gold miner panning case? What's the gold miner panning case that you're telling me that if they just go out there with a gold mine pan, they don't get an NOI, that they're in violation of the law? Tell me what that case is. Well, I don't know the name of the one that was recently decided down in Oregon, in southern Oregon. Maybe Mr. Buechel might know. It dealt with an action brought by the United States government. I'm not sure how that resulted. There was either a civil penalty or a jail time, maybe just civil penalty. The other issue is I think there was a case — So it wouldn't be violating the Mining Act. It would be violating some other trespass law. Violating Forest Service public land law, essentially. The mining law gives you an ability to file claims. And then prior to the 1970s, there was no regulation. You just went out and did what you wanted. But since the modern regulatory state has come in, for better or worse — some people call them too onerous, some too weak, you know, it really depends on the point of view — you have to get some sort of review by the Forest Service. It's public land. We still — the public still owns the land. You have a right to go out there. And the Forest Service again says, I don't like the color of your hair or, you know, you can't mine here. They have to come up with a reason. There's damage to fish, air quality, recreation, hunting and fishing, whatever. So you need some sort of Forest Service review. Now, if you find that the Forest Service has — someone submits an NOI, the Forest Service merely just accepts it as a courtesy, then I lose the case. But we think the record in the law is very clear. The agency has influence. It has discretion. And that triggers the ESA. And I still think, under Judge Fletcher's hypothetical, that the NOI process is not going to be obliterated. Will it be made more onerous? If the regulation is changed, as he suggested. Well, there wouldn't be a regulation that has to change. All you would have to do is the Forest Service from the regional level, the forest level, could say to the Fish and Wildlife Service or NOAA Fisheries for Salmon saying, we're getting, you know, these dozens and dozens, tens of river miles of suction dredging. We've got to sit down and see what the impacts are. There was some of that going on in the 1990s for a few individual operations, but not on this programmatic level. If the Forest Service did that, then the result kind of comes like the Seventh Circuit case, which is then you do the NOIs and there's not much discretion. Well, that's a mini PO and you'd have to change the ESA as well, right? Well, we wouldn't change the ESA. It would basically — The ESA rather, excuse me. No, the ESA regs are the Interior and Commerce Regulations. And that's just if there's influence, it's a discretionary action. Discretionary involvement. I guess, Mike, what I'm struggling with is it either is or it isn't. If it's an agency action, then you're probably right. If it's not an agency action based upon the long history, which the district court did, I think, a great job of analyzing, then you've got a whole different deal. It's not what was contemplated. How it's going to come down, I don't know. But the reality is this isn't just a little window of time here. This has got a long, long, long, long history. Right. The mining law is a rich history. The Endangered Species Act from the Supreme Court from the 1970s on, I think, has an even, from a legal standpoint, more powerful history. I think the bottom line, and I appreciate that. I don't want to take up the time. It's a full morning. The question is, does the agency influence how mining occurs when someone submits the NOI? I think the record is clear. And it might be onerous, but we think the law is pretty clear in the record. Let's hear from the government. And we have taken you way over time, but we will give you a chance to respond. Okay. I appreciate it. Thank you very much, sirs. May it please the Court. My name is Lane McFadden. I represent the United States Department of Agriculture Forest Service. I'll be sharing my time with counsel for the interveners, and I'll try my allotment to address. And how do you anticipate splitting your time? I was going to take ten and give him five. I want to say in response to the number of questions that the decision is, the decision the Court is confronted with today is not controlled by this Court's prior decision in the Siskiyou Regional Education Project case. Certainly in that case, the Court did say a number of times that the district ranger's regulatory determination, whether a notice of intent describes activities that is likely to cause a significant disturbance of surface resources, that decision is discretionary. And it is. But being discretionary is not enough to meet the standards imposed by either Section 782 of the Endangered Species Act or the implementing regulations, 36 CFR 402. The reason I say it that way is, as I read the Siskiyou case, they're trying to decide whether the decision to allow an NOI to go forward is a final agency action within the meaning of the APA. And they say that because some discretion is involved in deciding whether to allow the magnet to go forward pursuant to the NOI, it is a final agency action under the APA. The term under the ESA is, is this an agency action? And if it's an agency action, that then triggers the consultation. Why should I read final agency action to mean something different from agency action? I would have thought, frankly, that the APA standard for final agency action is more stringent than the word simple agency. Why am I supposed to read agency, excuse me, action, final action compared to action? Why am I supposed to read the words action differently in the APA and in the ESA? Because, Your Honor, the full phrase in the ESA, this is 16 U.S.C. 1536a2, is agency action funded, authorized, or carried out by the Federal agency. And then it's further refined by the agency. Anything the agency done that is an action is carried out by the agency. I don't think that adds anything. The question is, is it an action? Well, certainly any final agency action falls under the description of actions carried out by the agency, if they are, in fact, an affirmative Federal agency action, an action taken by the agency. Here, the argument is not that the mining activities taking place on Forest Service lands are activities carried out by the agency. I understand that. Maybe we should go back, then, and you can respond to what I asserted by giving you the opportunity to respond. I understand that the Forest Service in this case has conceded that the issuance of a plan of operation is an agency action under the ESA. Do you agree that that's so as a matter of law? Yes. So the only thing that happens with the plan of operation is that the agency reads the plan of operation, approves it, and goes forward. The agency funds nothing. The activity is carried out by the miners, not by the agency. So why is agency action to be read differently with respect to whether it's a plan of operation or an NLI? Because with what the Part 228 regulations stipulate is that activities that require a plan of operations cannot proceed legally until they have been approved or authorized, if you will, by the Forest Service. Right. And as part of that approval process, the Forest Service exercises ongoing discretionary involvement or control. They can impose terms and conditions. They can talk to the operator about what activities will and will not be permitted and their scope. There's a lot of influence the Forest Service can exercise in those situations. That's very different than the type of activity that proceeds pursuant to a notice of intent, which is activity that is not likely to disturb surface resources. I'm at ER 51. It's a letter from the Forest Service to Mr. McCracken, the general manager of the new 49ers. He says, we've got your NOI, and if you do the following things, and there's a fairly long list of things, it goes over onto the next page, we'll approve it as an NOI. And as I look at a proposed NOI that comes afterwards, I gather this was done in response to the letter to Mr. McCracken. The NOI submitted by the new 49ers for the 2004 season runs seven pages of PICA-type single-spaced of all the things they're going to do. And if that NOI goes forward, that's not just for a single minor. That's for everyone in the, quote, club who's operating pursuant to any leases given out by the new 49ers. That's not a little de minimis deal. That's an approval for suction minor on this whole river system. That's an NOI. Now, it looks to me as though the Forest Service has a fair amount of flexibility in terms of when it says, this is okay under an NOI, or this requires a plan of operation. But as I look at this NOI, which is clearly what the Forest Service is contemplating as an NOI, this is not just some individual going out there and saying, I want to do a little bit of suction mining. So why is this not agency action? Well, the question is whether it's federal agency action that exercises ongoing discretionary involvement or control. And I don't want to cut off these. Where does that ongoing come from? It comes from, I believe it's 40 CFR 40202. It's the Fish and Wildlife Service implementing regulations for the ESA. So a single action that's not ongoing, a single approval, never comes under the ESA? That doesn't make any sense to me. No. An authorization, as stipulated by the ESA, does require consultation at that point. Right. And then the regulations prescribe that other activities, right, so we're not talking about a permit, because here we're not talking about the issuance of a permit. No, no. We're just saying you may go forward pursuant to the NOI. Right. But that also mischaracterizes the regulatory role, right, because the Forest Service is not empowered under its own regulations to say you may go forward. They do issue a letter to explain the response. Well, then what's this letter doing to Mr. McCracken that says under this NOI, you may not go forward unless you do X, Y, and Z, and then it's a very long list. The letter says, or the letter, the legal authority for that letter is to say that if you do proceed under this, you're likely to cause significant disturbance of surface resources and you can't do the activities you've described without a plan of operations. The letter is read to understand either scale down your operations to fall under that threshold or we will have to arrange a plan of operations before your activities are approved. And Mr. McCracken responded with activities that were not likely to cause a significant disturbance of surface resources. This means that the Forest Service's review and authority over that activity ends at that point. Let me ask you the question that I asked the other side, which is to say, I take seriously and I think the Seventh Circuit got it right with respect to the Clean Water Act in that Texas case. That is to say, if you have a general set of criteria in the Clean Water Act, it will be a general permit. And then someone filing a notice that he intends to operate under the general permit is merely a ministerial act. That's not agency action and doesn't trigger. I mean, that seems to me correct. Do we have anything comparable here or, and this may be the important part of the question, could the Forest Service construct something comparable here after consultation with the ESA, excuse me, with Fish and Wildlife under the ESA, such that NOIs issued under this general guidance would then become non-ministerial? Would that be feasible to do? Let me answer this question separately and answer the hypothetical first. Yes, that would be possible. I mean, that would be something that the Forest Service would be legally authorized to do. It would have to amend the Part 228 regulations to put very specific criteria in for this decision. The reason that the agency has not done that is because the decision is very different in a different forest. And, of course, these are nationwide regulations. And what constitutes a significant disturbance to service resources is a stream-by-stream determination. So those would be very hard criteria to come up with as a factual matter. But legally, the Forest Service could do that. But I'm actually asking a practical question. Practically, that would be a terrible way to address these issues. But that's because there's so much discretion involved with each NOI? Well, that's because the effect of the activities described in the NOI is so different depending on where they're happening. So you've got to make a judgment call every time. Right. But it sounds as though it's possible to do an NOI not merely with respect to an individual operator of one of these section mining operations. And this is small potato stuff. As far as I can tell, the 49er people, the company is not a hobbyist, but the individual miners look like hobbyists. I think that all the notices of attention here are recreational gold miners who go out. Yeah, yeah. We're not talking commercial mining operations. We're talking hobbyists. Right. Exactly. Yeah, yeah. But it looks as though under the current system with NOIs, if you want to revise it, you can do the Forest Service is quite willing to do an NOI that would cover the single NOI that would cover the entire river system. You know, I'm sorry. I have to object to the language of the Forest Service doing an NOI and the Forest Service approving an NOI. I mean, that's the entire sort of conceptual basis of this. Right. The mining activities that are ongoing that don't require a plan of operations were approved by Congress by the General Mining Law and the Organic Administration Act over 100 years ago. And the agency, when it promulgated its Part 228 regulations in the 1970s, took its possible discretionary authority under the statutes and cabinets such that they can only sort of not approve those activities, if you will. They are preauthorized. And the agency can only prohibit activities before they file a plan of operations at a certain scale. And that scale, by the way, covers most of the mining activity on the National Forest. Just to help me see if I'm understanding this correctly, it seems to me that what the NOI is to the regulations here is what a private offering exemption is to the securities laws. A private offering exemption is the Interstate Lansdale's Registration Act. So, for example, if I'm going to offer an offering in a limited partnership to 10 friends and I want to raise a million bucks, I'm going to sell $100,000 worth to each friend. And in order to protect myself, I'm going to do an offering circular so there's full disclosure. I don't have to file an S-1 with the SEC. I don't have to file a qualification statement with the California Department of Corporation because I have this basically minor league exemption here. I may have to file a form indicating that I have done that, like a 25-102-F with California. I may have to file some kind of a form that you change it all the time with the SEC. But basically, I don't have to go through the full-blown registration. It seems to me, and I'd like you to comment whether this is correct or not, it seems to me that what we have in the NOI is just that. It's basically a small-scale deal. The miners, by virtue of the Organic Act and the General Mining Law of 1872, have the right, the U.S. doesn't, to come in and mine on this small scale. The question is, can the Forest Service help in the way that the miner did here, which was never objected to, as far as I can tell on the record, to make certain that, even in a minor way, that there would be no significant surface disturbance. And it's in order to let this play, that Congress and the agency let this happen. Now what we have is a situation where advocates for the tribe and others are saying, we don't like this anymore. We think that anything that the Forest Service is involved in, any decision that you make to help minimize any kind of damage, contrary, in my view, to the Marble Murillette case, we want you to do an S-1 here. Everything's an S-1. There's a public registration of everything here. I don't care if you're having an offering for $20 or $100 or $1,000. We want you to do a full-blown S-1. Everybody knows that it costs tens of thousands of dollars to do an S-1. So basically there are no more private offerings. Is that a fairly accurate description of what's involved in this lawsuit? Yes, Your Honor, with the understanding. I'm not familiar with the underlying financial statutes, but I'd say the characterization is fair. I've eaten well into my shared time here, but if I might ask for a minute more. I mean, that's essentially what it is. And I'd be remiss if I sat down without highlighting this Court's case law, in which this Court has approved similar schemes. There's the Texas case, of course, but there's also, of course, Western Watersheds v. Matejko and California Sportfishing v. FERC, which is a more recent case. And in both of those cases, this Court reviewed situations where the agencies had said, because there are preexisting rights at issue here, one was waterway rights dating back to the 19th century and one was a FERC license that was quite recent. We will only retain the discretion to impose conditions and to consult with relevant agencies and to place any requirements at all under very limited circumstances. And this Court said that the agencies are entitled, as it said in California Sportfishing v. FERC, to give themselves discretion to decide whether to exercise discretion, and that in so doing, they did not automatically trigger the consultation requirements of the ESA. You know, I would respond differently as a practical matter to the Forest Service argument. If we didn't have in front of us, as an example of an NOI, the NOI submitted by the new 49ers, over 50 miles of gold-bearing property is available for prospecting and camping along the wild and scenic Klamath River and its tributaries. And then we have this map, which I'm sure you're familiar with, of all of the mining operations that would be conducted by the individual mining pursuant to a single NOI. I mean, that's clearly within the contemplation of the Forest Service as what is an NOI. And if they allow mining to go forward under the NOI, you're saying that's not an agency action. Now, I would respond differently if we had some general criteria and we were talking about each individual operator being required to come forward. That would be a different question for me. But what I have here is a single NOI that's covering contemplated mining over 50 miles of river. Well, if Your Honor is objecting to the district ranger's determination that that NOI describes activities that aren't likely to cause significant disturbance of surface resources, then that isn't the question presented in court. That's not my question at all. My question is whether or not allowing the mining to go forward pursuant to the NOI is agency action. I'm not getting into the guts as to whether it should have been approved or not. And the answer is no under the ESA. Because? Because it is not an approval or authorization as the ESA describes. It doesn't give the agency any discretionary involvement over those activities once they begin. The regulations don't even say that, to be perfectly candid, that there's any requirement that you wait 15 days to hear back from the district ranger before you go out onto your property. That the agency only has the authority and the only affirmative action it can take in these circumstances is to require a plan of operations. And I appreciate Your Honor's concern about there being real criteria, that there be some consolation that these decisions aren't arbitrary. And here, the record's clear that there were real criteria being applied uniformly to all the 2004 notices of intent on the Klamath. And that's why, and in Six Rivers, which, of course, isn't one of the defendants here, that's why one of the notices of intent, or I think two, were sent back and said, look, we have a means by which we make this discretionary determination, and if you go and proceed with these activities, you will be obligated to file a plan of operations first. And the response was, that wasn't necessary. All right. Now, you have eaten into your co-counsel's time, but you wanted to reserve five. You have five. Thank you, Your Honor. Sure. James Cooper, I presented to you. Help me out here and talk into the mic. We are the real parties in this case. And identify yourself for the record, because you were too far away from the mic to get it picked up. Excuse me? Sorry. Start from here, because the mic picks up on the tape. So identify yourself. There you go. We are the real parties in interest. And so we are the ones who have the stake, the dog in the fight here. And I'd like to say that both the Forest Service and the environmentalists are dead wrong, and it is absolutely false that any kind of federal permission is needed before this mining goes forward. As he just admitted, contrary to the statements in his own brief, there is nothing in the regulations that makes these miners wait at all. If Your Honor focuses on the notice of intent that talks about 50 miles, I would focus on the word property, 50 miles of property. This is not just authorized by the statute. The statute sets up a scheme where property is granted. And these are private possessory property rights which are leased by my client. They own this property. So it's even worse than Judge Smith's example. It's not just that there's an exemption in the law. It's that we have private property that we are entitled to use, just like the people in the Tejo, unless someone tells us that, no, you're going too far in some way that is expressly forbidden. And there is nothing, no requirement of any authorization at all. It's clear in the current regulations in Section 228.4a.4. It says the only time you have to stop mining is if someone comes in and says you have to stop mining. And it's that choice, at that point, that there's an agency action. Up until that point, there is nothing authorized, funded, or carried out. That sounds as though you disagree with the Forest Service's concession with respect to the plan of operation. Do you? I have no idea why they did that. The record contains full-blown. Does that mean to say you disagree with them? Yeah. Yeah. The record contains. I had no idea. The record contains a full-blown Section 7 consultation. And if I read you the first page and the first sentence of the NIMS letter, this letter represents NIMS' biological opinion that the effects of permitting suction dredging are not likely to jeopardize the continued existence of coho. They already had a full-blown consultation. It's not true that nobody regulated this since the 70s. This has been regulated for decades. They go in there, they say there's fish here, there's fish here, you can't go here, you can't go here. There are no environmental impacts at all. In fact, there was not even a listed species at all. This Court shouldn't even be exercising jurisdiction in this case because the listing was held to be invalid at the time this decision was made. So we have no listing. We have no effects. We have a six-year-old record with four notices of intent that are now all moot. And then afterwards, oh, and by the way, there was also a full-blown environmental impact statement, which all these decisions were tiered to. This thing has been the subject of process after process after process. And then to make matters worse, the tribe goes out and persuades the legislature to outlaw the entire practice that is at issue here. It is now illegal to suction dredge mine in California. So why are we here? Why isn't this case moot? There's no – there's nothing left here but purely hypothetical questions. And they may be very interesting questions and they may be very complex questions, but this Court, on this record, with no fish, no adverse impacts, no concrete application, and no record that has any further relevance because we don't know if the mining will ever be allowed again, and if it is allowed again, under what scheme, this Court shouldn't even issue a decision. The California regulations are temporary, are they not? They are indefinite. What the statute said is it is outlawed unless and until the Department does some kind of environmental analysis and comes up with some kind of regulations, which may or may not permit the dredging at all. So – and whatever happens in the future will be under a completely different record. So I don't know. Even if you're going to win, you'd rather we not decide anything? Well, of course if I'm going to win, I'd rather that you decide it. But I can't say that, so I'd rather that Your Honor refrain from issuing an advisory opinion that will then doubtless be misinterpreted in the future in the new regulatory regime. I think the merits are quite clear. I mean, if we get away from this business that, oh, the Forest Service, it has like this ability to influence, and ability to influence is the hallmark agency action. No, no. There's a statute here. It says authorized, funded, or carry out. They don't authorize the mining because the mining is allowed to go forward without permission. They don't fund the mining, that's for sure. And they don't carry it out. They're not out there digging out the gold.  That's the statute. Nothing there. Now you go to the regulations. Are they granting licenses? No. Contracts? No. Easements? No. Rights of way? No. Permits? Grants? Nothing. They're not granting anything. They're exercising a discretionary decision as to whether to go and enforce against something. And there's case after case that says that's not the type of agency. The inaction, the letting it go forward without zooping in and doing something, that's not agency action. This isn't even a close case. Okay? There was your five minutes. You talked fast, so you got a lot in. One minute. Strong emotions here, Your Honors. I think we should go watch the Treasurer of Sierra Nevada or Sierra Madre for some good historical perspective. A couple of quick points. Judge Fletcher asked a government counsel, the determination on NOI versus POO, whether the mine should go forward. That's a judgment call every time. Answer from the government, yes. If you look at the Home Builders case in the Supreme Court, analyzing what's in agency action, the Supreme Court says judgment call equals discretion. And here there's examples of that throughout, certainly from the Siskiyou case. The government says that they have no authority over mining. They don't do anything. Yet then they say, well, we sent a few of those NOIs back. They didn't have any authority to influence the mining. Under what grounds did the Forest Service reject and send back the NOIs? I would respectfully submit that the government has plenty of authority here, and they've used it here. Would the process become more onerous? I think so. I think that's something the tribe, some of the environmentalists, and the government could work on, see if we could minimize that impact. And just lastly, on Mr. Buechel's points, he said we own this property. It's private property. This is owned by the taxpayers of the United States. This is public land. Clients or their leasehors have claims upon them. But we certainly own them as taxpayers in the United States. Well, I don't want to get too deeply into my history as a property professor, but a bundle of sticks, they own a little bit of the bundle. Oh, yes. Actually, the Supreme Court called it a unique form of property. But as the Supreme Court said, 85, I think it was, that the government has paramount authority to regulate that. And that's what they're doing here. And that's the influence that triggers the hearing. Is the type of knot that one uses to tie the bundle of sticks together an agency action? That's a good one. I should. I teach mining law in law school. I'm going to ask that question. See if I can. Thank you very much. The question is why Mr. McFadden and Mr. Buechel are sitting at the same table. Yes. We tried to work this out. Actually, the tribe is met with the government. We tried to work it out. We've just reached an impasse on the law here. But I make sure the CSOs keep these folks apart here. Thank you. Thank you very much. OK. Thank thank all of you for an interesting argument in an interesting case. The case of Kirook tribe versus Forest Service and New Forty Niners intervenors is now submitted for decision.
judges: Todd, Fletcher W. , Smith M.